# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Deangelo Mitchell, Defendant,

and

AA Ace Bail by Frances and Palmetto Surety Corp., as Surety, Petitioners.

Appellate Case No. 2016-000980

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Charleston County
Stephanie P. McDonald, Circuit Court Judge

---

Opinion No. 27747
Heard April 12, 2017 – Filed November 8, 2017

---

## AFFIRMED

---

Robert T. Williams, Sr. and Benjamin Allen Stitely, both of Williams, Stitely & Brink, PC, of Lexington, for Petitioners.

Attorney General Alan McCrory Wilson and V. Henry Gunter, Jr., both of Columbia, and Solicitor Scarlett A. Wilson, of Charleston, for Respondent.

---

**JUSTICE JAMES:** This appeal arises from an order estreating a surety bond and remitting one-half of the bond forfeiture. The court of appeals affirmed in an unpublished opinion. *State v. Mitchell*, Op. No. 2016-UP-070 (S.C. Ct. App. filed Feb. 17, 2016). We affirm the court of appeals' holding that the bond estreatment was proper and that the amount of forfeiture remitted was not arbitrary or capricious. We hold that the circuit court may consider the willfulness of a bondsperson's actions, in addition to the willfulness of a defendant's actions, when determining whether, and to what extent, to remit a bond forfeiture.

### FACTUAL AND PROCEDURAL HISTORY

Deangelo Mitchell was arrested for possession with intent to distribute cocaine and was released on a $25,000 surety bond. Subsequently, Mitchell was arrested for trafficking in cocaine, distribution of cocaine, and involuntary manslaughter; bond was set at $400,000. Mitchell's bonds were then consolidated for all his pending charges and the circuit court set a $150,000 surety bond. Bond conditions included a standard good behavior condition, plus house arrest and electronic monitoring. AA Ace Bail by Frances and Palmetto Surety Corporation (collectively, Bond Company) executed the $150,000 surety bond and Mitchell was released.

Thereafter, the State moved to revoke Mitchell's bond on the basis that Mitchell blatantly disregarded the house arrest and electronic monitoring provisions of his bond and thus, violated the "good behavior" requirement of the bond contract.[1] Mitchell appeared at the revocation hearing and testified that he was never informed

---

[1] The parties have concentrated their arguments upon Mitchell's repeated electronic monitoring violations as being violations of the "good behavior" condition of his bond. Arguably, a good behavior violation is committed only when the defendant has committed another crime while out on bond. Even if repeated violations of the electronic monitoring provisions are not "good behavior" violations, the bond covering Mitchell (and most other defendants) clearly includes a provision that the defendant shall comply with all conditions of bond; since this bond included a provision that Mitchell would comply with all conditions of bond, and since house arrest and electronic monitoring were conditions of bond, the result is the same.

of the conditions of his bond and that he was never informed he was violating a condition of his bond.

Mitchell's bondsperson, Frances Jenkins, testified at the revocation hearing that she has been a bondsperson for almost twenty years. She testified she was aware electronic monitoring was a condition of Mitchell's bond. Jenkins admitted the monitoring company contacted her two to three times to inform her that Mitchell was violating the electronic monitoring conditions; she testified that she in turn contacted Mitchell and told him to "tighten up." Concerning her responsibilities as a bondsperson, Jenkins initially testified, "I write appearance bonds, not behavior bonds." Later during her testimony, she conceded that her responsibilities as a bondsperson include helping to enforce bond conditions other than the defendant's appearance in court.

James Robinson, the owner of the monitoring company, testified at the revocation hearing that his office contacted Mitchell and Jenkins on several occasions regarding the electronic monitoring violations, and that after continuing violations, his office notified Jenkins she needed to arrest Mitchell because "it was very obvious" that he was staying out all night. Robinson testified "it got to where there was just no compliance" and that Mitchell committed daily house arrest and electronic monitoring violations. Robinson testified he advised Jenkins that it appeared Mitchell was "out there doing drug transactions." Robinson testified that Jenkins refused to pick Mitchell up and responded, "well, that's how he makes a living." Jenkins denied telling Robinson that she knew Mitchell made money dealing drugs.

The circuit court found Mitchell's claims of ignorance as to the conditions of his bond were not credible and revoked the bond for repeated violations of the terms and conditions of the bond. Mitchell was placed in custody until he pled guilty and was sentenced to a term of incarceration.

On August 8, 2012, the State filed a Notice of Forfeited Recognizance seeking estreatment of the bond posted by Bond Company. The circuit court held two hearings on the motion, and on July 9, 2014, the circuit court issued its order estreating $75,000 of the $150,000 bond.

In its order, the circuit court first noted that pursuant to *Ex parte Polk*, 354 S.C. 8, 579 S.E.2d 329 (Ct. App. 2003), the purpose of the bond "was to assure not only Mr. Mitchell's appearance, but also his good behavior while out on bond," noting the additional conditions of the bond order imposing house arrest and

electronic monitoring. Second, the court found Mitchell's violations, "as well as Ms. Jenkins' admitted failure to fulfill her obligations as the bondsperson and take appropriate action to address them, were clearly willful." Finally, the court found that the State incurred expenses in addressing this matter and that the State was prejudiced because this case, in addition to other cases brought to the court's attention, resulted in the issuance of a moratorium on the use of electronic monitoring in the circuit. The court of appeals affirmed both the circuit court's decision to estreat the bond and the amount estreated. *Mitchell*, Op. No. 2016-UP-070.

## STANDARD OF REVIEW

"An appellate court reviews the circuit court's ruling on the forfeiture or remission of a bail bond for abuse of discretion." *State v. McClinton*, 369 S.C. 167, 170, 631 S.E.2d 895, 896 (2006).

> An abuse of discretion occurs when the circuit court's ruling is based upon an error of law, such as application of the wrong legal principle; or, when based upon factual conclusions, the ruling is without evidentiary support; or, when the circuit court is vested with discretion, but the ruling reveals no discretion was exercised; or when the ruling does not fall within the range of permissible decisions applicable in a particular case, such that it may be deemed arbitrary and capricious.

*Id.*

## DISCUSSION

Bond Company contends estreatment was improper because the sole purpose of a surety is to insure the defendant's appearance for court, not the defendant's behavior. Bond Company concedes that a bond may be estreated for a violation of a bond condition but argues that once the defendant is surrendered to the State, the entire amount of estreatment must be remitted, as long as the State has suffered no prejudice. Bond Company further contends that even if estreatment were proper, the amount remitted was arbitrary and capricious because Mitchell appeared for court,

the State incurred no costs from locating or prosecuting Mitchell, and the State otherwise suffered no prejudice. We disagree.[2]

An appearance recognizance bond:

> must be conditioned on the person charged personally appearing before the court specified to answer the charge or indictment and to do and receive what is enjoined by the court, and not to leave the State, and be of good behavior toward all the citizens of the State, or especially toward a person or persons specified by the court.

S.C. Code Ann. § 17-15-20(A) (2014). Upon breach of a condition of the recognizance, the recognizance is forfeited and the liability of the surety to pay the amount of the penalty becomes fixed, "unless relieved or exonerated by action of the court." *Pride v. Anders*, 266 S.C. 338, 340, 223 S.E.2d 184, 185 (1976) (citing *State v. Edens*, 88 S.C. 302, 70 S.E. 609 (1911)).

The procedure for estreatment of bonds in the instant case is controlled by South Carolina Code § 17-15-170 (2014). *See State v. Holloway*, 262 S.C. 552, 554, 206 S.E.2d 822, 823 (1974). The circuit court followed the requisite procedure. Section 17-15-170 provides that whenever the recognizance is forfeited by noncompliance with its conditions, the State shall immediately notify any party bound in the forfeited recognizance to appear and show cause "why judgment should not be confirmed against him." At the show cause hearing, if the person so bound "does not give a reason for not performing the condition of the recognizance as the court considers sufficient, then the judgment on the recognizance is confirmed." S.C. Code Ann. § 17-15-170.

---

[2] Bond company also contends that any estreatment must be conditional upon the surrender of the defendant to the State under S.C. Code Ann. § 38-53-70 (2015) and that they are relieved of liability because Mitchell appeared in court. We hold this issue is not preserved for this Court's review. Even if the issue was preserved, section 38-53-70 is inapplicable to this case because it only applies to an estreatment being paid in installments resulting from a defendant's failure to appear in court. Here, Mitchell appeared for court and estreatment was ordered based upon Mitchell's violation of the good behavior condition and upon the willful noncompliance of Mitchell and Jenkins.

Thereafter, a second hearing may be held to determine the amount, if any, to be remitted. *Holloway*, 262 S.C. at 555, 206 S.E.2d at 823. The court may "remit the whole or any part of the forfeiture as may be deemed reasonable" upon affidavit sufficiently stating the forfeiture resulted "from ignorance or unavoidable impediment and not from wilful default." S.C. Code Ann. § 17-15-180 (2014).

The circuit court is vested with discretionary power to determine whether a bond forfeiture should be remitted, and if so, to what extent. *State v. Workman*, 274 S.C. 341, 343, 263 S.E.2d 865, 866 (1980). *But see United States v. Parr*, 560 F.2d 1221, 1224 (5th Cir. 1977) ("Neither frustration nor its kinsman vindictiveness should be of weight in tipping the scales by which the elements of the court's discretion is weighed."). "[I]n determining whether any remission of the judgment is warranted, the trial court is not limited to considering only the actual cost to the State." *Ex parte Polk*, 354 S.C. at 12–13, 579 S.E.2d at 331. "[T]he following factors, *at the least*, should be considered in determining whether, and to what extent, the bond should be remitted: (1) the purpose of the bond; (2) the nature and wilfulness of the default; (3) any prejudice or additional expense resulting to the State." *Id.* at 13, 579 S.E.2d at 331 (emphasis added).

We respectfully reject Bond Company's argument that a surety is relieved of all liability upon the surrender of a defendant to the State. The obligation of a surety is not to the State to produce the defendant, but is rather "an obligation to answer, to the extent of the penalty, for the default of the defendants, as principals." *Pride*, 266 S.C. at 341, 223 S.E.2d at 186. The surrender of a defendant after default does not entitle a surety to a remission of the forfeiture "as a matter of right." *Holloway*, 262 S.C. at 555–56, 206 S.E.2d at 824.

Although this Court most frequently addresses conditions of a bond breached by a defendant's failure to appear, a professional bondsperson "is certainly aware that an appearance bond carries conditions beyond the defendant's appearance in court." *State v. Boatwright*, 310 S.C. 281, 283, 423 S.E.2d 139, 141 (1992). "The bond may also be estreated if the defendant breaches terms or conditions of the bond other than appearance." *Id.* at 286, 423 S.E.2d at 142 (Toal, J., dissenting).

Here, despite Bond Company's procurement of Mitchell's appearance in court, the record supports the circuit court's finding that Mitchell committed daily violations of the house arrest and electronic monitoring conditions of his bond. Accordingly, we conclude the circuit court did not abuse its discretion in estreating Mitchell's bond for repeated noncompliance with a condition of bond.

We further conclude that the three factors enumerated in *Polk*, *supra*, are not the exclusive considerations of the circuit court in determining whether to remit a bond forfeiture and, if so, to what extent the forfeiture should be remitted. Indeed, in *Polk*, the court of appeals correctly noted that the circuit court may consider other relevant factors. We hold that in the bond estreatment setting, it is proper for a circuit court to consider the bondsperson's willful failure to monitor the defendant's compliance with conditions of bond in determining whether justice requires the enforcement of a forfeiture order.

Here, the circuit court properly considered the bondsperson's willful failure to fulfill her obligations as the bondsperson, in addition to the *Polk* factors. The circuit court deliberately analyzed each relevant factor pertinent to the circumstances of this case, including: (1) Mitchell's willful daily violations of the condition of house arrest and (2) the bondsperson's total failure to supervise Mitchell and do her part to remedy his noncompliance. Though some circuit judges might have remitted more, and though some might have remitted less, the circuit court weighed the relevant factors and set forth clear factual findings. In adherence to our standard of review, we hold the circuit court did not abuse its discretion in ordering estreatment and in remitting $75,000 of the amount forfeited.

## CONCLUSION

We hold that in an estreatment proceeding, the circuit court may consider evidence of a bondsperson's willful failure to fulfill their obligations as the bondsperson, in addition to the factors expressed in *Polk*, in determining whether, and to what extent, a bond forfeiture should be remitted. We hold the circuit court acted within its discretion in determining the amount of the bond forfeiture to be remitted. The court of appeals' decision is affirmed.

**AFFIRMED.**

**BEATTY, C.J., KITTREDEGE, J., and Acting Justices James E. Moore and William P. Keesley, concur.**