# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Ronnie Carrol Tucker, Defendant,

Bail Out Bonding (Surety), Appellant.

Appellate Case No. 2017-002599

Appeal From Pickens County
Perry H. Gravely, Circuit Court Judge

Opinion No. 5796
Heard October 14, 2020 – Filed January 27, 2021

**AFFIRMED**

Kenneth Clifton Gibson, of The Law Office of Kenneth Gibson, of Greenville, for Appellant.

Attorney General Alan McCrory Wilson and Senior Assistant Deputy Attorney General William M. Blitch, Jr., both of Columbia, for Respondent.

**KONDUROS, J.:** In this bond estreatment case, Bail Out Bonding (Surety) appeals the decision of the circuit court ordering a partial estreatment of Ronnie Carrol Tucker's bond. Surety contends Tucker's entry into a pretrial intervention (PTI) program was a "deferred disposition" pursuant to section 17-15-20(B) of the South Carolina Code (2014), thereby releasing it from liability. Tucker failed to

complete PTI and failed to appear for trial. The circuit court partially estreated the bond. We affirm.

**FACTS**

Tucker was charged with two counts of unlawful conduct towards a child. The circuit court authorized Tucker's release from custody pursuant to an appearance recognizance bond in an order filed on September 29, 2014, specifying the conditions of Tucker's release. The order mandated:

> [Tucker] be released from custody on the condition that he will personally appear before the designated court at the place, date and time required to answer the charge made against him and do what shall be ordered by the court and not depart the State without the permission of the court and be of good behavior.

Tucker signed the order indicating he agreed he was obligated to be present at his trial. Surety also signed the order establishing its obligation to the State in the amount of $10,000 "should [Tucker] fail in performing the conditions of this [o]rder." Thereafter, the solicitor allowed Tucker to participate in PTI; however, Tucker did not successfully complete PTI.[1] After Tucker failed to appear for trial for the criminal charges pending against him, the circuit court issued a bench warrant on February 16, 2016. The court then ordered Surety to appear in court and held a hearing on December 15, 2017, to address the bond.

At the bond estreatment hearing, Surety argued Tucker's referral to PTI qualified as a "deferred disposition" pursuant to section 17-15-20(B), discharging the bond and ending Surety's liability on the bond. In opposition, the State argued entry into PTI did not constitute a deferred disposition under the statute and the charges against Tucker were still pending. The State asserted it sent bond cards to Surety on three separate dates; Surety denied receiving the cards.

The circuit court ordered the estreatment of twenty-five percent of the $10,000 bond $10,000, which amounted to $2,500. This appeal followed.

**STANDARD OF REVIEW**

---

[1] The Record does not contain a copy of the PTI agreement between Tucker and the solicitor's office.

"The trial court's estreatment of a bond forfeiture will not be set aside unless there has been an abuse of discretion." *State v. Policao*, 402 S.C. 547, 552, 741 S.E.2d 774, 776 (Ct. App. 2013). "An abuse of discretion occurs when the circuit court's ruling is based on an error of law." *Id.* (quoting *State v. Lara*, 386 S.C. 104, 107, 687 S.E.2d 26, 28 (2009)).

> An appellate court reviews the circuit court's ruling on the forfeiture or remission of a bail bond for abuse of discretion. An abuse of discretion occurs when the circuit court's ruling is based upon an error of law, such as application of the wrong legal principle; or, when based upon factual conclusions, the ruling is without evidentiary support; or, when the circuit court is vested with discretion, but the ruling reveals no discretion was exercised; or when the ruling does not fall within the range of permissible decisions applicable in a particular case, such that it may be deemed arbitrary and capricious.

*State v. McClinton*, 369 S.C. 167, 170, 631 S.E.2d 895, 896 (2006) (citation omitted).

## LAW/ANALYSIS

Surety contends entry into PTI is a "deferred disposition" under section 17-15-20(B) of the South Carolina Code (2014), thereby discharging the bond and relieving the surety of its obligation. We disagree.

Section 17-15-20 establishes the obligations of a person under a bond agreement and when a bond is discharged. The statute sets forth, in part:

> (A) An appearance recognizance or appearance bond must be conditioned on the person charged personally appearing before the court specified to answer the charge or indictment and to do and receive what is enjoined by the court, and not to leave the State . . . .

> (B) Unless a bench warrant is issued, an appearance recognizance or an appearance bond is discharged upon adjudication, a finding of guilt, a deferred disposition, or

as otherwise provided by law.

*Id.*

The Pretrial Intervention Act, found in sections 17-22-10 to -170 of the South Carolina Code (2014 & Supp. 2019), authorizes each circuit's solicitor to establish and supervise a PTI program:

> (A) Each circuit solicitor shall have the prosecutorial discretion as defined herein and shall as a matter of such prosecutorial discretion establish a pretrial intervention program in the respective circuits.
>
> . . .
>
> (C) A pretrial intervention program shall be under the direct supervision and control of the circuit solicitor; however, he may contract for services with any agency desired.

S.C. Code Ann. § 17-22-30.

A person accepted into the PTI program must:

> (1) waive, in writing and contingent upon his successful completion of the program, his right to a speedy trial; [and]
>
> (2) agree, in writing, to the tolling while in the program of all periods of limitation established by statutes or rules of court . . . .

S.C. Code Ann. § 17-22-90.

The PTI statutory provisions specifically mandate the solicitor and the defendant shall enter into an agreement, including a timeframe by which the solicitor will decide to dismiss the charges or to pursue a conviction.

> In any case in which an offender agrees to an intervention program, a specific agreement must be made between the solicitor and the offender. This agreement

shall include the terms of the intervention program, the length of the program and a section stating the period of time after which the prosecutor will either dismiss the charge or seek a conviction based upon that charge.

S.C. Code Ann. § 17-22-120.

Section 17-22-150 establishes the opportunity available to a defendant upon a successful completion of the PTI program and the result of unsuccessful completion.

> (a) In the event an offender successfully completes a pretrial intervention program, the solicitor shall effect a noncriminal disposition of the charge or charges pending against the offender.  Upon such disposition, the offender may apply to the court for an order to destroy all official records relating to his arrest and no evidence of the records pertaining to the charge may be retained . . . .

> (b) In the event the offender violates the conditions of the program agreement: (1) the solicitor may terminate the offender's participation in the program, (2) the waiver executed pursuant to [section] 17-22-90 shall be void on the date the offender is removed from the program for the violation[,] and (3) the prosecution of pending criminal charges against the offender shall be resumed by the solicitor.

§ 17-22-150.

We note our supreme court has confirmed the solicitor, not the court, makes the decision to admit a defendant into PTI.

> [T]he judge cannot overrule the solicitor's objection to an applicant's admission to PTI without running afoul of our constitutional provision requiring a separation of powers.  A circuit judge is a member of the judicial department and cannot constitutionally exercise the function of a member of the executive department.  The solicitors and Attorney General are members of the executive branch of

government.

*State v. Tootle*, 330 S.C. 512, 515, 500 S.E.2d 481, 482 (1998) (citations omitted).

An analysis of the issue on appeal must include a review of not only subsection (B) of section 17-15-20, but also subsection (A).  Section 17-15-20(A) establishes:

> An appearance recognizance or appearance bond must be conditioned on the person charged *personally appearing before the court specified* to answer the charge or indictment *and to do and receive what is enjoined by the court*, and not to leave the State, and be of good behavior toward all the citizens of the State, or especially toward a person or persons specified by the court.

(emphases added).

Thus, the bond requires the defendant to appear and to do what the court requires. We note that the solicitor, not the court, authorizes and contracts with a defendant to participate in PTI, and if the defendant violates its agreement with the solicitor, "the prosecution of *pending* criminal charges against the offender *shall be resumed* by the solicitor."  S.C. Code Ann. § 17-22-150(b)(3) (emphases added).  Tucker did not receive a resolution from the court of the charges against him at the time he entered PTI.  Rather, he entered into an agreement with the solicitor only.  Section 17-15-20(A) mandates that a bond is conditioned on the defendant's actions towards the court, not the solicitor's office.

This court's decision in *State v. Firetag Bonding Service* is impactful.  345 S.C. 54, 545 S.E.2d 838 (Ct. App. 2001).  In that matter, a surety added to the back of a bond agreement, "NOTICE: NO CONTINUANCE WITHOUT PRIOR CONSENT FROM BONDING COMPANY."  *Id.* at 55, 545 S.E.2d at 839.  When the defendant failed to appear for trial, the court estreated the bond.  *Id.*  On appeal, the surety argued because the court did not notify the surety the matter was continued to a later date, the trial court erred by estreating the bond.  *Id.*  This court, however, affirmed the trial court, explaining section 17-15-20(A) establishes an appearance recognizance bond requires a defendant to personally appear and "*to do and receive what shall be enjoined by the court.*"  *Id.* at 56, 545 S.E.2d at 839 (emphasis by court) (quoting § 17-15-20).  Our court further stated:

> As is readily apparent, nothing in this section authorizes

> a surety . . . to set the conditions of an appearance recognizance regarding when and where the defendant must appear. "What" a defendant must "do and receive," *i.e.*, the conditions of the appearance recognizance, are those things "enjoined by the court," not the surety. The stamped notation on the back of the appearance recognizance at issue that seeks to limit the magistrate's authority to continue the defendant's case constitutes, therefore, an unauthorized condition. As such, the notation is nothing more than mere surplusage and in no way affects the validity of the appearance recognizance itself.

*Id.*

The statutory directive requiring a defendant to do what the court enjoins is applicable here as well. Tucker's entry into PTI—the opportunity the solicitor gave him—was not "those things 'enjoined by the court.'" *Id.* Rather, the condition of the bond required Tucker's appearance in court, and the court did not err in estreating the bond when Tucker failed to appear.

We now address subsection (B) of section 17-15-20, which allows for the discharge of a bond under certain circumstances. "Unless a bench warrant is issued, an appearance recognizance or an appearance bond is discharged upon adjudication, a finding of guilt, a deferred disposition, or as otherwise provided by law." *Id.* The statute provides, therefore, for specific instances in which a bond is discharged. Surety contends entry into PTI is one of those circumstances. We disagree.

We turn to our jurisprudence for instances in which the disposition of charges against a defendant may be addressed at a later time. We note precedent indicates a court may choose to suspend a rendered sentence to allow a defendant to participate in the system known as "drug court." In *State v. Perkins*, our supreme court described the opportunity available to a defendant for drug court:

> The Thirteenth Circuit Drug Court Program (hereinafter "Drug Court Program" or "Program") is a voluntary therapeutic program which may be offered to a defendant that is charged with a drug abuse offense within the thirteenth circuit jurisdiction. The defendant pleads

> guilty to the charge and agrees with the solicitor to enter
> the Program. As a result, the trial court imposes a
> sentence on the defendant, but suspends the sentence,
> conditioned upon the successful completion the Program.
> The participant agrees to abide by certain terms and
> conditions of participation and may be sanctioned or
> ultimately terminated for failure to comply with the terms
> of the Program.

378 S.C. 57, 59, 661 S.E.2d 366, 367 (2008).

Another example of the court's authority to defer a complete resolution of charges was discussed in *State v. Campbell*, 376 S.C. 212, 656 S.E.2d 371 (2008), in which the defendant planned to testify against a codefendant. While the issue on appeal in *Campbell* is not relevant here, the supreme court referenced the common practice of an abated sentence as an incentive for testimony: "We note the typical procedure in this situation is that a defendant pleads guilty pursuant to a plea agreement and then the defendant's sentencing is held in abeyance until after the defendant has cooperated at the co[]defendant's trial." *Id.* at 217, 656 S.E.2d at 373-74.

Surety contends Tucker's entry into PTI was similar to other forms of deferred resolution of charges against a defendant. We disagree.

Surety specifically argues Tucker's entry into PTI is similar to a conditional discharge in section 44-53-450(A) of the South Carolina Code (2018). However, that statute establishes the court's authority to place a defendant on probation, after a determination of guilt, and require the defendant to participate in a drug treatment program:

> Whenever any person who has not previously been
> convicted of any offense under this article or any offense
> under any state or federal statute relating to marijuana, or
> stimulant, depressant, or hallucinogenic drugs, pleads
> guilty to or is found guilty of possession of a controlled
> substance, . . . the court, without entering a judgment of
> guilt and with the consent of the accused, may defer
> further proceedings and place him on probation . . . ,
> including the requirement that such person cooperate in a
> treatment and rehabilitation program . . . . Upon

> violation of a term or condition, the court may enter an adjudication of guilt and proceed as otherwise provided. Upon fulfillment of the terms and conditions, the court shall discharge the person and dismiss the proceedings against him.

*Id.*

We recognize multiple examples in our jurisprudence of the deferred and abated disposition of criminal matters but find them dissimilar to entry into PTI. The solicitor's invitation to a defendant to enter into PTI allows a solicitor, not the court, to hold pending charges in abeyance during the pendency of PTI. The disposition of the outstanding charges against the defendant are not addressed by the court until PTI is successfully completed or the pending charges are resumed because a defendant does not complete PTI. Further, upon entry into PTI, the defendant has not pled guilty. Thus, the characteristics of PTI are unlike other matters in which a court defers disposition of charges against a defendant.

Tucker did not plead guilty, was not found guilty, and was not placed on probation by the court. The circuit court did not render a decision regarding the charges against him. Rather, the solicitor and Tucker entered into an agreement to allow Tucker an opportunity to participate in PTI. The PTI statute clearly establishes criminal charges remain pending during the intervention program and the offender will be prosecuted if he does not successfully complete PTI. As such, entry into the PTI program does not qualify as a deferred disposition under section 17-15-20(B).

In addition to finding entry into PTI is not a deferred disposition and the charges against Tucker were still pending upon entry into PTI, we also find Surety is obligated on the bond pursuant to contract law. Our jurisprudence indicates a surety bond is a contract, subject to the rules of contract interpretation:

> We have held that the State's right to estreatment or forfeiture of a bail bond issued in a criminal case arises from the contract, *i.e.*, the bail bond form signed by the parties. The parties to such a contract typically include the defendant; the person or company which acts as surety for the bond, if any; and the state and local government entities identified on the bond form. We

routinely have applied contract principles to resolve various issues arising in bond forfeiture cases.

*State v. McClinton*, 369 S.C. 167, 171, 631 S.E.2d 895, 897 (2006). "The State's right to estreatment is governed by contract." *State v. Cochran*, 358 S.C. 24, 27, 594 S.E.2d 844, 845 (2004).

If the bond agreement is breached, the liability of the surety is established, unless the court orders otherwise. *Pride v. Anders*, 266 S.C. 338, 341, 223 S.E.2d 184, 186 (1976). "Since it was undisputed that the condition of the recognizances had been breached by the failure of the defendants to appear, the recognizances were forfeited and the liability of appellant-surety to pay the amount of the penalty then became fixed, unless relieved or exonerated by action of the court." *Id.* at 340, 223 S.E.2d at 185.

"The obligation of a surety is not to the State to produce the defendant, but is rather 'an obligation to answer, to the extent of the penalty, for the default of the defendants, as principals.'" *State v. Mitchell*, 421 S.C. 365, 372, 807 S.E.2d 193, 196 (2017) (quoting *Pride*, 266 S.C. at 341, 223 S.E.2d at 186).

Under the terms of the bond agreement, Surety agreed to indebt itself to the State in the amount of $10,000 "should [Tucker] fail in performing the conditions of this [o]rder." When Tucker failed to appear for trial, "the liability of the surety became fixed." 266 S.C. at 340, 223 S.E.2d at 185. "Since it was undisputed that the condition of the recognizances had been breached by the failure of the defendants to appear, the recognizances were forfeited and the liability of appellant-surety to pay the amount of the penalty then became fixed, unless relieved or exonerated *by action of the court*." *Id.* (emphasis added).

We also find it noteworthy the *Firetag* decision indicated defendant's failure to appear alone was sufficient to authorize the court to estreat the bond. "Indeed, [defendant's] failure to appear on August 16, 1999, was alone a sufficient basis for the magistrate to forfeit the amount of the appearance recognizance, notwithstanding the stamped notation." 345 S.C. at 56, 545 S.E.2d at 839. Surety contracted to be indebted to the State in the amount of $10,000 should Tucker fail to appear for trial. The principles of contract law dictate Surety was bound by its obligation. Because the circuit court did not act to relieve Surety of its promise, Surety remained liable.

**CONCLUSION**

We find the circuit court did not abuse its discretion by its partial estreatment of the bond.  Tucker's acceptance into PTI by the solicitor was not a deferred disposition by the court; the PTI statutory provisions establish the charges remained pending; and, because Surety was contractually liable for the failure of Tucker to appear for trial, the court did not err in estreating the bond.  Accordingly, the circuit court's decision is

**AFFIRMED.**

**LOCKEMY, C.J., and MCDONALD, J., concur.**